LEE LITIGATION GROUP, PLLC
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ANDRES RUILOVA, HUGO TEXIS,
BERTIN ALDO GARCIA, ISMAEL GUTIERREZ,
VALENTIN VIVAR, ELIZABETH KELLY,
STACY SAMUEL, STEPHANIE PEREZ,
EVAN MILHO, JAMAL KHAN,
KEVIN O'BRIEN and CHUCK REYNOLDS,
*on behalf of themselves, FLSA Collective Plaintiffs*
*and the Class,*

      Plaintiffs,

      v.

443 LEXINGTON AVE, INC. d/b/a DAVIO'S,
75 ARLINGTON STREET, INC. d/b/a DAVIO'S,
ONE PATRIOT PLACE, LLC d/b/a DAVIO'S,
151 GRANITE STREET LLC d/b/a DAVIO'S,
55 BOYLSTON STREET, LLC d/b/a DAVIO'S,
427 WALNUT STREET LLC d/b/a DAVIO'S,
111 S. 17TH STREET, INC. d/b/a DAVIO'S,
201 MAIN STREET LLC d/b/a DAVIO'S,
and STEVE DIFILLIPPO,

      Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

Plaintiffs, ANDRES RUILOVA, HUGO TEXIS, BERTIN ALDO GARCIA, ISMAEL

GUTIERREZ, VALENTIN VIVAR, ELIZABETH KELLY, STACY SAMUEL, STEPHANIE

PEREZ, EVAN MILHO, JAMAL KHAN, KEVIN O'BRIEN and CHUCK REYNOLDS

(collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, 443 LEXINGTON AVE, INC. d/b/a DAVIO'S, 75 ARLINGTON STREET, INC. d/b/a DAVIO'S, ONE PATRIOT PLACE, LLC d/b/a DAVIO'S, 151 GRANITE STREET LLC d/b/a DAVIO'S, 55 BOYLSTON STREET, LLC d/b/a DAVIO'S, 427 WALNUT STREET LLC d/b/a DAVIO'S, 111 S. 17TH STREET, INC. d/b/a DAVIO'S, 201 MAIN STREET LLC d/b/a DAVIO'S (collectively, "Corporate Defendants") and STEVE DIFILLIPPO ("Individual Defendant," and together with Corporate Defendants, "Defendants"), and state as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wage, (2) unpaid wages for all hours worked due to improper meal break deduction, (3) unpaid wages due to unreimbursed uniform costs, (4) liquidated damages and (5) attorneys' fees and costs.

2.      Plaintiffs ANDRES RUILOVA, HUGO TEXIS, BERTIN ALDO GARCIA, ISMAEL GUTIERREZ and VALENTIN VIVAR ("New York Plaintiffs") further allege, pursuant to the New York Labor Law ("NYLL"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wage, (2) unpaid wages for all hours worked due to improper meal time deduction, (3) unpaid wages due to unreimbursed uniform costs, (4) liquidated damages, (5) statutory penalties and (6) attorneys' fees and costs.

3.      Plaintiffs ELIZABETH KELLY, STACY SAMUEL, STEPHANIE PEREZ, EVAN MILHO ("Massachusetts Plaintiffs") further allege, pursuant to the Massachusetts Fair Wage Law, that they and others similarly situated are entitled to recover from Defendants: (1)

unpaid minimum wage, (2) unpaid wages for all hours worked due to improper meal time deduction, (3) unpaid wages due to unreimbursed uniform costs, (4) treble (liquidated) damages and (5) attorneys' fees and costs.

4.    Plaintiffs JAMAL KHAN, KEVIN O'BRIEN and CHUCK REYNOLDS ("Pennsylvania Plaintiffs") further allege, pursuant to the Pennsylvania Minimum Wage Act, that they and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wage, (2) unpaid wages for all hours worked due to improper meal time deduction, (3) unpaid wages due to unreimbursed uniform costs, (4) liquidated damages and (5) attorneys' fees and costs.

**JURISDICTION AND VENUE**

5.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

6.    Original jurisdiction also exists over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this case is a putative class action in which: (1) there are 100 or more members in the proposed class; (2) at least some members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed Class Members exceed $5,000,000.00 in aggregate.

7.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

**PARTIES**

*Plaintiffs:*

8.    Plaintiff ANDRES RUILOVA is a resident of Queens County, New York.

9.    Plaintiff HUGO TEXIS is a resident of Queens County, New York.

10.    Plaintiff BERTIN ALDO GARCIA is a resident of Queens County, New York.

11.    Plaintiff ISMAEL GUTIERREZ is a resident of Queens County, New York.

12.    Plaintiff VALENTIN VIVAR is a resident of Bronx County, New York.

13.    Plaintiff ELIZABETH KELLY is a resident of Suffolk County, Massachusetts.

14.    Plaintiff STACY SAMUEL is a resident of Middlesex County, Massachusetts.

15.    Plaintiff STEPHANIE PEREZ is a resident of Norfolk County, Massachusetts.

16.    Plaintiff EVAN MILHO is a resident of Bristol County, Massachusetts.

17.    Plaintiff JAMAL KHAN is a resident of Philadelphia County, Pennsylvania.

18.    Plaintiff KEVIN O'BRIEN is a resident of Burlington County, New Jersey.

19.    Plaintiff CHUCK REYNOLDS is a resident of Camden County, New Jersey.

*Davio's Restaurants:*

20.    Defendants own and operate a nationwide chain of restaurants under the common trade name "Davio's," including one (1) location in New York, four (4) locations in Massachusetts, and two (2) locations in Pennsylvania, with addresses as follows:

a)  447 Lexington Avenue, New York, NY 10017 ("Davio's Manhattan");

b)  75 Arlington Street, Boston, MA 02116 ("Davio's Boston");

c)  236 Patriot Place, Foxborough, MA 02035 ("Davio's Foxborough");

d)  250 Granite Street, Braintree, MA 02184 ("Davio's Braintree");

e)  55 Boylston Street, Chestnut Hill, MA 02467 ("Davio's Chestnut Hill");

f)  1250 Market Street, Lynnfield, MA 01940 ("Davio's Lynnfield");

g)  111 South 17th Street, Philadelphia, PA 19103 ("Davio's Philadelphia"); and

h)  200 Main Street, King of Prussia, PA 19406 ("Davio's King of Prussia")

(collectively referred to as "Davio's Restaurants").

21.     Davio's Restaurants are operated by Defendants as a single integrated enterprise. Specifically, they are engaged in related activities, share common ownership and have a common business purpose.

a)  Davio's Restaurants are engaged in the same business of operating restaurants that serve Italian food and steak.

b)  Davio's Restaurants conduct business under a common trade name "Davio's," use the same logo, and share similar décor and appearance.

c)  Davio's Restaurants are commonly owned by Individual Defendant STEVE DIFILLIPPO and operated by the same executive officers.

d)  Davio's Restaurants are advertised jointly on Defendants' website (http://www. davios.com).

e)  Davio's Restaurants sell similar menu items.

f)  Defendants sell gift cards that can be used at any of the Davio's Restaurants.

g)  Employees were interchangeable among Davio's Restaurants and transferred to and from the different locations.

h)  Davio's Restaurants maintain centralized labor relations and human resources, and utilize the same payroll system for employees.

i)  Davio's Restaurants implement the same wage and hour policies and procedures established by Defendants.

j)  Defendants centrally advertise career opportunities for Davio's Restaurants and list all job positions on their website.

***Defendants:***

22.     Corporate Defendant 443 LEXINGTON AVE, INC. d/b/a DAVIO'S is a domestic business corporation organized under the laws of the State of New York with its principal place of business located at 447 Lexington Avenue, New York, NY 10017 and an address for service of process located at c/o Corporate Offices, P.O. Box 2369, South Hamilton, MA 01982. Corporate Defendant 443 LEXINGTON AVE, INC. operates "Davio's Manhattan."

23.     Corporate Defendant 75 ARLINGTON STREET, INC. d/b/a DAVIO'S is a domestic profit corporation organized under the laws of the State of Massachusetts with its principal place of business located at 75 Arlington Street, Boston, MA 02116 and an address for service of process located at 110 Larch Row, Wenham, MA 01984. Corporate Defendant 75 ARLINGTON STREET, INC. operates "Davio's Boston."

24.     Corporate Defendant ONE PATRIOT PLACE, LLC d/b/a DAVIO'S is a limited liability company organized under the laws of the State of Massachusetts with its principal place of business located at 236 Patriot Place, Foxborough, MA 02035 and an address for service of process located at 75 Arlington Street, Boston, MA 02116. Corporate Defendant ONE PATRIOT PLACE, LLC operates "Davio's Foxborough."

25.     Corporate Defendant 151 GRANITE STREET LLC d/b/a DAVIO'S is a limited liability company organized under the laws of the State of Massachusetts with its principal place of business located at 250 Granite Street, Braintree, MA 02184 and an address for service of process located at 118 Larch Row, Wenham, MA 01984. Corporate Defendant 151 GRANITE STREET LLC operates "Davio's Braintree."

26.     Corporate Defendant 55 BOYLSTON STREET, LLC d/b/a DAVIO'S is a limited liability company organized under the laws of the State of Massachusetts with its principal place of business located at 55 Boylston Street, Chestnut Hill, MA 02467 and an address for service of process located at 118 Larch Row, Wenham, MA 01984. Corporate Defendant 55 BOYLSTON STREET, LLC operates "Davio's Chestnut Hill."

27.     Corporate Defendant 427 WALNUT STREET LLC d/b/a DAVIO'S is a limited liability company organized under the laws of the State of Massachusetts with its principal place of business located at 1250 Market Street, Lynnfield, MA 01940 and an address for service of

process located at 118 Larch Row, Wenham, MA 01984. Corporate Defendant 427 WALNUT STREET LLC operates "Davio's Lynnfield."

28.     Corporate Defendant 111 S. 17TH STREET, INC. d/b/a DAVIO'S is a business corporation organized under the laws of the State of Pennsylvania with its principal place of business located at 111 South 17th Street, Philadelphia, PA 19103 and an address for service of process located at 1628 Chestnut Street, Philadelphia, PA 19103. Corporate Defendant 111 S. 17TH STREET, INC. operates "Davio's Philadelphia."

29.     Corporate Defendant 201 MAIN STREET LLC d/b/a DAVIO'S is a limited liability company organized under the laws of the State of Pennsylvania with its principal place of business and an address for service of process located at 200 Main Street, King of Prussia, PA 19406. Corporate Defendant 201 MAIN STREET LLC operates "Davio's King of Prussia."

30.     Individual Defendant STEVE DIFILLIPPO is an owner and chief executive officer of Corporate Defendants and Davio's Restaurants. Individual Defendant STEVE DIFILLIPPO exercised functional control over the business and financial operations of Corporate Defendants. Individual Defendant exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and Class Members. With respect to Plaintiffs, FLSA Collective Plaintiffs and Class Members, Individual Defendant exercised his power to (and also delegate to managers and supervisors the power to) (i) fire and hire, (ii) determine rate and method of pay, (iii) supervise and control employee work schedules or conditions of employment, (iv) maintain employment records, and (iv) otherwise affect the quality of employment. Individual Defendant had ultimate authority over employee-related decisions, including personnel, workplace conditions, payroll, and wage and hour policies concerning Plaintiffs, FLSA Collective Plaintiffs and Class Members.

31.     Individual Defendant STEVE DIFILLIPPO also had the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) supervise and control employee work schedules or conditions of employment, (iv) maintain employment records, and (v) otherwise affect the quality of employment, with respect to the managerial employees who directly supervised Plaintiffs, FLSA Collective Plaintiffs and Class Members. Individual Defendant ensured that the managers implement Defendants' employment policies and pay practices and direct employees to effectively complete their job duties.

32.     At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

33.     At all relevant times, the work performed by Plaintiffs were directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

34.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including but not limited to cooks, line cooks, food preparers, dishwashers, hosts/hostesses, porters, expeditors, servers, runners, bussers, bartenders and barbacks) employed by Defendants at Davio's Restaurants on or after the date that is three (3) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

35.     Pursuant to an agreement entered into by and between Defendants and the undersigned counsel for Plaintiffs, the statute of limitations on the wage FLSA claims of Plaintiffs and FLSA Collective Plaintiffs were tolled from September 7, 2018 and April 1, 2019.

36.     At all relevant times, Plaintiffs and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and

have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them regular and overtime wages for all hours worked due to improper meal break deduction. The claims of Plaintiffs stated herein are essentially the same as those of FLSA Collective Plaintiffs.

37.     Further, with respect to tipped employees (including but not limited to servers, runners, bussers, bartenders and barbacks) (the "Tipped Subclass"), Defendants failed to pay them the lawful minimum wage to which they were entitled. Defendants were not entitled to take any tip credits because they failed to meet statutory requirements under the FLSA. In addition, Defendants failed to reimburse the costs of purchasing and maintaining the required uniforms to the Tipped Subclass and, in effect, reduced their wages below the required minimum wage and overtime compensation. Plaintiffs ISMAEL GUTIERREZ, VALENTIN VIVAR, EVAN MILHO, STEPHANIE PEREZ and CHUCK REYNOLDS (collectively, "Tipped Plaintiffs") are all members of the FLSA Collective and the Tipped Subclass.

38.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

39.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including but not limited to cooks, line cooks, food preparers, dishwashers, hosts/hostesses, porters, expeditors, servers, runners, bussers, bartenders and barbacks) employed by Defendants at Davio's Restaurants on or after the

date that is six (6) years (or a shorter period depending on where the individual class member is located) before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members"). The Class consists of members who worked for Defendants in New York ("New York Subclass"), members who worked for Defendants in Massachusetts ("Massachusetts Subclass"), and members who worked for Defendants in Pennsylvania ("Pennsylvania Subclass").

40.     Pursuant to an agreement entered into by and between Defendants and the undersigned counsel for Plaintiffs, the statute of limitations of the relevant state wage claims as to Plaintiffs and putative Class Members were tolled from September 7, 2018 and April 1, 2019.

41.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

42.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class and each of the three state subclasses. The Class further includes a subgroup of tipped employees (including but not limited to servers, runners, bussers, bartenders and barbacks) (the "Tipped Subclass") who also number more than forty (40). Tipped Plaintiffs ISMAEL GUTIERREZ, VALENTIN VIVAR, EVAN MILHO, STEPHANIE PEREZ and CHUCK REYNOLDS are members of both the Class and the Tipped Subclass.

43.    Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein of failing to pay them regular and overtime wages for all hours worked due to improper meal break deduction. Further, Tipped Subclass Members were subject to the same corporate practice of Defendants of failing to pay them the required minimum wage and overtime compensation due to invalid tip credit deductions and unreimbursed uniform costs. As to the New York Subclass, Defendants failed to provide proper wage notices and failed to provide proper wage statements, in violation of the NYLL. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

44.    Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

45.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

46.    Defendants and other employers throughout the country violate the New York Labor Law, Massachusetts Fair Wage Law and Pennsylvania Minimum Wage Act. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

47.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

　　　　a)   Whether Defendants employed Plaintiffs and the Class within the meaning of the applicable state labor laws in New York, Massachusetts and Pennsylvania;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and Class Members properly;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and Class Members for their work;

d)  Whether Defendants properly notified Plaintiffs and Class Members of their regular hourly rate and overtime rate;

e)  Whether Defendants paid Plaintiffs and Class Members for all hours worked given Defendants' improper meal time deduction;

f)  Whether Defendants paid Tipped Plaintiffs GUTIERREZ, VIVAR, MILHO, PEREZ and REYNOLDS and the Tipped Subclass Members the proper minimum wage;

g)  Whether Defendants provided proper notice to Tipped Plaintiffs and the Tipped Subclass Members that Defendants were taking a tip credit;

h)  Whether Defendants provided proper wage statements informing Tipped Plaintiffs and the Tipped Subclass Members of the amount of tip credit taken for each payment period and other information required to be provided on wage statements;

i)  Whether Defendants took the proper amount of tip credit allowance from Tipped Plaintiffs and the Tipped Subclass Members;

j)  Whether Defendants required Tipped Plaintiffs and the Tipped Subclass Members to perform non-tipped work for more than twenty percent (20%) of their work shifts;

k)  Whether Defendants kept daily records of tips earned by Tipped Plaintiffs and the Tipped Subclass Members;

l)  Whether Defendants failed to reimburse Tipped Plaintiffs and the Tipped Subclass Members for the costs of purchasing and maintaining the required uniforms;

m) Whether Defendants provided proper wage statements to New York Plaintiffs and the New York Subclass Members per requirements of the NYLL; and

n)  Whether Defendants provided proper wage notices to New York Plaintiffs and the New York Subclass Members per requirements of the NYLL.

## STATEMENT OF FACTS

### *Plaintiffs, FLSA Collective Plaintiffs and the Class*

48.    Throughout their employment with Defendants, Plaintiffs regularly observed and spoke to their co-workers about Defendants' pay practices and policies. Based on Plaintiffs' direct observations and conversations with other employees at Davio's Restaurants, Plaintiffs, FLSA Collective Plaintiffs and Class Members worked similar hours that regularly exceeded forty (40) hours per workweek, were similarly compensated at hourly pay rates, and similarly suffered from Defendants' common policies that failed to pay proper wages under the FLSA and the applicable state wage laws.

49.    At all relevant times, Defendants automatically deducted thirty (30) minutes per shift from the employees' hours worked based on purported meal breaks. Based on Plaintiffs' experience and observations, however, Plaintiffs and all other employees at Davio's Restaurants were not able to take their meal breaks and were required to work through such breaks on a regular basis. Nonetheless, Defendants automatically and indiscriminately deducted a thirty (30) minute meal break from the employees' compensable work time for each shift (i.e. one hour for double-shift), instead of tracking actual break times with their readily available punch clock system. By doing so, Defendants categorically reduced their employees' compensable hours every week. As a result of Defendants' improper meal time deduction, Plaintiffs, FLSA Collective Plaintiffs and the Class were not paid compensation for all hours worked to which they are entitled.

50.    Based on Tipped Plaintiffs' observations and conversations with other tipped employees at Davio's Restaurants, Defendants paid Tipped Plaintiffs and the Tipped Subclass at the reduced tip minimum wage rate that were at all times less than the full federal minimum wage.

51.    Based on Tipped Plaintiffs' observations and conversations with other tipped employees at Davio's Restaurants, Tipped Plaintiffs and the Tipped Subclass did not receive proper notice that Defendants were claiming a tip credit. In addition, Tipped Plaintiffs and the Tipped Subclass did not receive notice informing them that the tips they received must be retained by them except for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received. Further, Defendants failed to provide proper wage statements informing Tipped Plaintiffs and the Tipped Subclass of the amount of tip credit taken for each payment period. In addition, based on Tipped Plaintiffs' observations and conversations with other tipped employees at Davio's Restaurants, Tipped Plaintiffs and the Tipped Subclass were similarly required to spend at least twenty percent (20%) of their work shifts engaging in non-tipped related activities.

52.    Based on Tipped Plaintiffs' observations and conversations with other tipped employees at Davio's Restaurants, Defendants required Tipped Plaintiffs and the Tipped Subclass to wear a jacket with the restaurant logo while working. Throughout their employment with Defendants, Tipped Plaintiffs and the Tipped Subclass were required to incur out-of-pocket expenses (i) to purchase several of the same required uniform at $35.00 per unit, and (ii) to have the uniform cleaned and pressed via drycleaning services. However, Defendants never reimbursed the tipped employees for any of the out-of-pocket costs of purchasing and cleaning the uniforms. Because Tipped Plaintiffs and the Tipped Subclass were at all times paid at reduced hourly rates that were less than the full federal minimum wage, the out-of-pocket uniform expenses resulted in the reduction of wages below the required minimum wage and overtime compensation.

53.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs, FLSA Collective Plaintiffs and the Class for all regular or overtime hours worked

due to Defendants' invalid meal time deduction, in violation of the FLSA and the applicable state wage laws.

54.     Defendants knowingly and willfully operated their business with a policy of not paying Tipped Plaintiffs and the Tipped Subclass the prevailing minimum wage due to invalid tip credit allowance. Defendants were not entitled to claim tip credit because they failed to satisfy the statutory requirements under the FLSA and the applicable state wage laws.

55.     Defendants knowingly and willfully operated their business with a policy of not reimbursing Tipped Plaintiffs and the Tipped Subclass for the costs of purchasing and maintaining the required uniforms and, in effect, reducing their wages below the prevailing minimum wage and overtime compensation, in violation of the FLSA and the applicable state wage laws.

56.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

### *New York Plaintiffs and the New York Subclass*

#### *Plaintiff ANDRES RUILOVA*

57.     From in or about June 2015 until in or about May 2018, Plaintiff ANDRES RUILOVA was employed by Defendants to work as a line cook at Davio's Manhattan located at 447 Lexington Avenue, New York, NY 10017.

58.     Throughout his employment with Defendants, Plaintiff ANDRES RUILOVA regularly worked (i) twelve (12) hours per day, from 11:00 a.m. to 11:00 p.m., for four (4) days per week and (ii) eight (8) hours per day, from 2:00 p.m. to 10:00 p.m., for one (1) day per week, for a total of fifty-six (56) hours per week.

59.     From the beginning of his employment with Defendants until in or about December 2015, Plaintiff ANDRES RUILOVA was paid a base hourly rate of $12.50. From in or about January 2016 until in or about May 2016, Plaintiff RUILOVA was paid a base hourly rate of $14.50. From in or about June 2016 until in or about August 2017, Plaintiff RUILOVA was paid a base hourly rate of $15.50. From in or about September 2017 until the end of his employment with Defendants, Plaintiff RUILOVA was paid a base hourly rate of $16.50.

### *Plaintiff HUGO TEXIS*

60.     From in or about July 2014 until on or about December 18, 2017, Plaintiff HUGO TEXIS was employed by Defendants to work as an expeditor at Davio's Manhattan located at 447 Lexington Avenue, New York, NY 10017.

61.     From the beginning of his employment with Defendants until in or about December 2015, Plaintiff HUGO TEXIS regularly worked twelve and a half (12½) hours per day, from 10:30 a.m. to 11:00 p.m., for six (6) days per week, for a total of seventy-five (75) hours per week. From in or about January 2016 until the end of his employment with Defendants, Plaintiff TEXIS regularly worked six (6) hours per day, from 5:00 p.m. to 11:00 p.m., for five (5) days per week, for a total of thirty (30) hours per week.

62.     From the beginning of his employment with Defendants until in or about December 2015, Plaintiff HUGO TEXIS was paid a base hourly rate of $10.00. From in or about January 2016 until the end of his employment with Defendants, Plaintiff TEXIS was paid a base hourly rate of $14.00.

### Plaintiff BERTIN ALDO GARCIA

63.    In or about February 2014, Plaintiff BERTIN ALDO GARCIA was hired by Defendants to work as a food preparer at Davio's Manhattan located at 447 Lexington Avenue, New York, NY 10017. Plaintiff GARCIA is a current employee of Defendants.

64.    From the beginning of his employment with Defendants until in or about May 2016, Plaintiff BERTIN ALDO GARCIA regularly worked nine (9) hours per day, from 8:00 a.m. to 5:00 p.m., for five (5) days per week, for a total of forty-five (45) hours per week. From in or about June 2016 until the end of his employment with Defendants, Plaintiff GARCIA regularly worked seven (7) hours per day, from 10:00 a.m. to 5:00 p.m., for five (5) days per week, for a total of thirty-five (35) hours per week.

65.    From the beginning of his employment with Defendants until in or about January 2016, Plaintiff BERTIN ALDO GARCIA was paid a base hourly rate of $13.00. From in or about February 2016 until in or about May 2016, Plaintiff GARCIA was paid a base hourly rate of $14.00. From in or about June 2016 until in or about December 2016, Plaintiff GARCIA was paid a base hourly rate of $15.00. From in or about January 2017 until in or about March 2019, Plaintiff GARCIA was paid a base hourly rate of $16.00. From in or about April 2019 until the present, Plaintiff GARCIA was paid a base hourly rate of $17.00.

### Plaintiff ISMAEL GUTIERREZ

66.    From in or about February 2016 until in or about May 2018, Plaintiff ISMAEL GUTIERREZ was employed by Defendants to work as a runner at Davio's Manhattan located at 447 Lexington Avenue, New York, NY 10017.

67.    From the beginning of his employment with Defendants until in or about December 2017, Plaintiff ISMAEL GUTIERREZ regularly worked twelve and a half (12½) hours per day,

from 10:30 a.m. to 11:00 p.m., for six (6) days per week, for a total of seventy-five (75) hours per week. From in or about January 2017 until the end of his employment with Defendants, Plaintiff GUTIERREZ regularly worked eight (8) hours per day, from 3:30 a.m. to 11:30 p.m., for five (5) days per week, for a total of forty (40) hours per week.

68.    From the beginning of his employment with Defendants until in or about December 2017, Plaintiff ISMAEL GUTIERREZ was paid a base hourly rate of $7.50. From in or about January 2018 until the end of his employment with Defendants, Plaintiff GUTIERREZ was paid a base hourly rate of $8.65. At all times, Plaintiff GUTIERREZ was paid as a tipped employee.

### *Plaintiff VALENTIN VIVAR*

69.    From in or about October 2017 until on or about December 13, 2017, Plaintiff VALENTIN VIVAR was employed by Defendants to work as a runner at Davio's Manhattan located at 447 Lexington Avenue, New York, NY 10017.

70.    Throughout his employment with Defendants, Plaintiff VALENTIN VIVAR regularly worked (i) eight and a half (8½) hours per day, from 3:30 p.m. to 12:00 a.m., for five (5) days per week and (ii) double-shift of thirteen and a half (13½) hours per day, from 10:30 a.m. to 12:00 a.m., for one (1) day per week, for a total of fifty-six (56) hours per week.

71.    Throughout his employment with Defendants, Plaintiff VALENTIN VIVAR was paid a base hourly rate of $7.50. At all times, Plaintiff VIVAR was paid as a tipped employee.

### *New York Plaintiffs and the New York Subclass*

72.    Throughout their employment with Defendants, Defendants automatically deducted thirty (30) minutes from the daily hours worked by New York Plaintiffs ANDRES RUILOVA, HUGO TEXIS, BERTIN ALDO GARCIA, ISMAEL GUTIERREZ, VALENTIN VIVAR and the New York Subclass Members, based on purported meal breaks. However, New

York Plaintiffs and the New York Subclass Members were required to work the entirety of their workdays without taking any meal breaks almost every day throughout their employment with Defendants. Even though New York Plaintiffs and the New York Subclass rarely took meal breaks, Defendants indiscriminately and automatically deducted thirty (30) minutes from their hours worked for each shift (i.e. one hour for double-shift). As a result, New York Plaintiffs and the New York Subclass were not compensated for all hours worked every week, in violation of the NYLL.

73.      Throughout their employment with Defendants, Defendants paid Tipped New York Plaintiffs ISMAEL GUTIERREZ, VALENTIN VIVAR and the Tipped New York Subclass Members at the reduced tip minimum wage rate that were at all times less than the full New York minimum wage.

74.      Throughout their employment with Defendants, Tipped New York Plaintiffs ISMAEL GUTIERREZ, VALENTIN VIVAR and the Tipped New York Subclass Members did not receive proper notice that Defendants were claiming a tip credit. In addition, Tipped New York Plaintiffs and the Tipped New York Subclass Members did not receive notice informing them that the tips they received must be retained by them except for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received. Further, Defendants failed to provide proper wage statements informing Tipped New York Plaintiffs and the Tipped New York Subclass Members of the amount of tip credit taken for each payment period.

75.      Based on Tipped New York Plaintiffs' observations and conversations with other tipped employees at Davio's Manhattan, Tipped New York Plaintiffs ISMAEL GUTIERREZ, VALENTIN VIVAR and the Tipped New York Subclass Members were similarly required to spend at least twenty percent (20%) of their work shifts engaging in non-tipped related activities,

20

such as rolling silverware in napkins; sweeping and mopping the floor; setting tables and decorating the restaurant for events; cleaning the restaurant; washing dishes; preparing and packaging food; and other non-tip related activities.

76.     Based on Tipped New York Plaintiffs' observations and conversations with other tipped employees at Davio's Manhattan, Defendants required Tipped New York Plaintiffs ISMAEL GUTIERREZ, VALENTIN VIVAR and other tipped employees to wear a shirt with the restaurant logo while working. Throughout their employment with Defendants, Tipped New York Plaintiffs and other tipped employees at Davio's Manhattan were required to incur out-of-pocket expenses (i) to purchase several of the same required uniform, and (ii) to have the uniform cleaned and pressed via drycleaning services. However, Defendants never reimbursed the tipped employees for any of the out-of-pocket costs of purchasing and cleaning the uniforms. Because Tipped New York Plaintiffs and the Tipped New York Subclass were at all times paid at reduced hourly rates that were less than the New York minimum wage, the out-of-pocket uniform expenses resulted in the reduction of wages below the required minimum wage and overtime compensation.

77.     Throughout their employment with Defendants, New York Plaintiffs and the New York Subclass Members did not receive proper wage and hour notice. The notice that they received from Defendants failed to state the correct rate of pay, the correct amount of tip credit allowance, and other information required under the New York Labor Law.

78.     Throughout their employment with Defendants, New York Plaintiffs and the New York Subclass Members did not receive proper wage statements with their wage payments each week, in violation of the New York Labor Law. The wage statements that they received from Defendants failed to accurately reflect their actual hours worked each week due to Defendants' invalid meal time deduction. As to Tipped New York Plaintiffs and the Tipped New York Subclass

Members, the wage statements that they received from Defendants failed to inform them of the correct rate of pay or the amount of tip credit taken for each payment period.

79.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notice and wage statements to New York Plaintiffs and New York Class Members, as required under the NYLL.

### *Massachusetts Plaintiffs and the Massachusetts Subclass*

#### *Plaintiff ELIZABETH KELLY*

80.    From in or about May 2017 until in or about September 2017, Plaintiff ELIZABETH KELLY was employed by Defendants to work as a hostess at Davio's Boston located at 75 Arlington Street, Boston, MA 02116.

81.    Throughout her employment with Defendants, Plaintiff ELIZABETH KELLY regularly worked ten (10) hours per day for four (4) days per week, for a total of approximately forty (40) hours per week.

82.    Throughout her employment with Defendants, Plaintiff ELIZABETH KELLY was paid a base hourly rate of $14.00.

#### *Plaintiff STACY SAMUEL*

83.    From in or about January 2018 until in or about April 2018, Plaintiff STACY SAMUEL was employed by Defendants to work as a hostess at Davio's Chestnut Hill located at 55 Boylston Street, Chestnut Hill, MA 02467.

84.    Throughout her employment with Defendants, Plaintiff STACY SAMUEL regularly worked (i) five and a half (5½) hours per day, from 4:00 p.m. to 9:30 p.m., for three (3) days per week and (ii) six (6) hours per day, from 4:00 p.m. to 10:00 p.m., for one (1) day per week, for a total of twenty-two and a half (22½) hours per week.

85.     Throughout her employment with Defendants, Plaintiff STACY SAMUEL was paid a base hourly rate of $12.00.

### *Plaintiff STEPHANIE PEREZ*

86.     From in or about September 2017 until in or about February 2018, Plaintiff STEPHANIE PEREZ was employed by Defendants to work as a bartender at Davio's Braintree located at 250 Granite Street, Braintree, MA 02184.

87.     Throughout her employment with Defendants, Plaintiff STEPHANIE PEREZ regularly worked five (5) days per week, for a total of forty-five (45) to fifty-five (55) hours per week, depending on her work schedule that varied each week.

88.     Throughout her employment with Defendants, Plaintiff STEPHANIE PEREZ was paid a base hourly rate of $3.75. At all times, Plaintiff PEREZ was paid as a tipped employee.

### *Plaintiff EVAN MILHO*

89.     From in or about September 2015 until in or about August 2017, Plaintiff EVAN MILHO was employed by Defendants to work as a server at Davio's Foxborough located at 236 Patriot Place, Foxborough, MA 02035.

90.     Throughout his employment with Defendants, Plaintiff EVAN MILHO regularly worked seven and a half (7½) hours per day, from 3:30 p.m. to 11:00 p.m., for two (2) days per week and twelve and a half (12½) hours per day, from 10:30 a.m. to 11:00 p.m., for two (2) days per week. In addition, Plaintiff MILHO was regularly required to work beyond his scheduled shift until 12:00 a.m. to 1:00 a.m. in order to finish various duties. Therefore, Plaintiff MILHO regularly worked a total of approximately forty-two (42) to forty-five (45) hours per week.

91.     Throughout his employment with Defendants, Plaintiff EVAN MILHO was paid at the reduced tip minimum wage rate. At all times, Plaintiff MILHO was paid as a tipped employee.

*Massachusetts Plaintiffs and the Massachusetts Subclass*

92.    Throughout their employment with Defendants, Defendants automatically deducted thirty (30) minutes from the daily hours worked by Massachusetts Plaintiffs ELIZABETH KELLY, STACY SAMUEL, STEPHANIE PEREZ, EVAN MILHO and the Massachusetts Subclass Members, based on purported meal breaks. However, Massachusetts Plaintiffs and the Massachusetts Subclass Members were required to work the entirety of their workdays without taking any meal breaks almost every day throughout their employment with Defendants. Even though Massachusetts Plaintiffs and the Massachusetts Subclass Members rarely took meal breaks, Defendants indiscriminately and automatically deducted thirty (30) minutes from their hours worked for each shift (i.e. one hour for double-shift). As a result, Massachusetts Plaintiffs and the Massachusetts Subclass were not compensated for all hours worked every week, in violation of the Massachusetts Fair Wage Law.

93.    Throughout their employment with Defendants, Defendants paid Tipped Massachusetts Plaintiffs STEPHANIE PEREZ, EVAN MILHO and the Tipped Massachusetts Subclass Members at the reduced tip minimum wage rate that were at all times less than the full Massachusetts minimum wage.

94.    Throughout their employment with Defendants, Tipped Massachusetts STEPHANIE PEREZ, EVAN MILHO and the Tipped Massachusetts Subclass Members did not receive proper notice that Defendants were claiming a tip credit. In addition, Tipped Massachusetts Plaintiffs and the Tipped Massachusetts Subclass did not receive notice informing them that the tips they received must be retained by them except for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received. Further,

Defendants failed to provide proper wage statements informing Tipped Massachusetts Plaintiffs and the Tipped Massachusetts Subclass of the amount of tip credit taken for each payment period.

95.    Based on Tipped Massachusetts Plaintiffs' observations and conversations with other tipped employees at Davio's Restaurants in Massachusetts, Tipped Massachusetts Plaintiffs STEPHANIE PEREZ, EVAN MILHO and the Tipped Massachusetts Subclass Members were similarly required to spend at least twenty percent (20%) of their work shifts engaging in non-tipped related activities, such as rolling silverware; folding napkins; sweeping and mopping the floor; stocking merchandise; setting tables and decorating the restaurant for events; dusting the restaurant; cleaning the windows, candles, salt shakers and cutlery; taking out the garbage; and other non-tip related activities.

96.    Based on Tipped Massachusetts Plaintiffs' observations and conversations with other tipped employees at Davio's Restaurants in Massachusetts, Defendants required Tipped Massachusetts Plaintiffs STEPHANIE PEREZ, EVAN MILHO and other tipped employees to wear a jacket with the restaurant logo while working. Throughout their employment with Defendants, Tipped Massachusetts Plaintiffs and other tipped employees at Davio's Restaurants were required to incur out-of-pocket expenses (i) to purchase several of the same required jacket at $35.00 per unit, and (ii) to have the uniform cleaned and pressed via drycleaning services. However, Defendants never reimbursed the tipped employees for any of the out-of-pocket costs of purchasing and cleaning the uniforms. Because Tipped Massachusetts Plaintiffs and the Tipped Massachusetts Subclass were at all times paid at reduced hourly rates that were less than the Massachusetts minimum wage, the out-of-pocket uniform expenses resulted in the reduction of wages below the required minimum wage and overtime compensation.

### *Pennsylvania Plaintiffs and the Pennsylvania Subclass*

#### *Plaintiff JAMAL KHAN*

97.     From in or about June 2013 until in or about June 2014 and from in or about July 2015 until in or about March 2017, Plaintiff JAMAL KHAN was employed by Defendants to work as a cook at Davio's Philadelphia located at 111 South 17th Street, Philadelphia, PA 19103.

98.     Throughout his employment with Defendants, Plaintiff JAMAL KHAN regularly worked (i) nine and a half (9½) hours per day, from 2:00 p.m. to 11:30 p.m., for three (3) days per week and (ii) thirteen and a half (13½) hours per day, from 10:00 a.m. to 11:30 p.m., for two (2) days per week, for a total of fifty-five and a half (55½) hours per week.

99.     From the beginning of his employment with Defendants until in or about December 2013, Plaintiff JAMAL KHAN was paid a base hourly rate of $13.00. From in or about January 2014 until the end of his employment with Defendants, Plaintiff KHAN was paid a base hourly rate of $16.00.

#### *Plaintiff KEVIN O'BRIEN*

100.    From in or about June 2014 until on or about December 24, 2016, Plaintiff KEVIN O'BRIEN was employed by Defendants to work as a cook at Davio's Philadelphia located at 111 South 17th Street, Philadelphia, PA 19103.

101.    Throughout his employment with Defendants, Plaintiff KEVIN O'BRIEN regularly worked approximately eight (8) hours per day, for five (5) days per week, for a total of forty (40) hours per week.

102.    During the first year of his employment with Defendants, Plaintiff KEVIN O'BRIEN was paid a base hourly rate of $14.00. After the first year, Plaintiff O'BRIEN was paid a base hourly rate of $16.00 until the end of his employment with Defendants.

*Plaintiff CHUCK REYNOLDS*

103. From in or about 2003 until in or about April 2012, Plaintiff CHUCK REYNOLDS was employed by Defendants to work as a bartender and server at Davio's Philadelphia located at 111 South 17th Street, Philadelphia, PA 19103. From in or about September 2013, Plaintiff REYNOLDS has been employed by Defendants to work as a bartender and server at Davio's Philadelphia. Plaintiff REYNOLDS is a current employee of Defendants.

104. Throughout his employment with Defendants, Plaintiff CHUCK REYNOLDS regularly worked four (4) to five (5) days per week, for a total of fifty (50) to sixty-five (65) hours per week, depending on his work schedule that varied each week.

105. From in or about 2007 until 2012 when Plaintiff CHUCK REYNOLDS was a bartender, he was paid a base hourly rate of $5.00. Since in or about 2013 when Plaintiff REYNOLDS became a server, he was paid at the reduced tip minimum wage rate of $2.83 per hour. At all times, Plaintiff REYNOLDS was paid as a tipped employee.

*Pennsylvania Plaintiffs and the Pennsylvania Subclass*

106. Throughout their employment with Defendants, Defendants automatically deducted thirty (30) minutes from the daily hours worked by Pennsylvania Plaintiffs JAMAL KHAN, KEVIN O'BRIEN, CHUCK REYNOLDS and the Pennsylvania Subclass Members, based on purported meal breaks. However, Pennsylvania Plaintiffs and the Pennsylvania Subclass Members were required to work the entirety of their workdays without taking any meal breaks almost every day throughout their employment with Defendants. Even though Pennsylvania Plaintiffs and the Pennsylvania Subclass Members rarely took meal breaks, Defendants indiscriminately and automatically deducted thirty (30) minutes from their hours worked for each shift (i.e. one hour for double-shift). As a result, Pennsylvania Plaintiffs and the Pennsylvania

Subclass were not compensated for all hours worked every week, in violation of the Pennsylvania Minimum Wage Act.

107.    Throughout their employment with Defendants, Defendants paid Tipped Pennsylvania Plaintiff CHUCK REYNOLDS and the Tipped Pennsylvania Subclass Members at the reduced tip minimum wage rate that were at all times less than the full Pennsylvania minimum wage.

108.    Throughout their employment with Defendants, Tipped Pennsylvania Plaintiff CHUCK REYNOLDS and the Tipped Pennsylvania Subclass Members did not receive proper notice that Defendants were claiming a tip credit. In addition, Tipped Pennsylvania Plaintiff and the Tipped Pennsylvania Subclass Members did not receive notice informing them that the tips they received must be retained by them except for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received. Further, Defendants failed to provide proper wage statements informing Tipped Pennsylvania Plaintiff and the Tipped Pennsylvania Subclass of the amount of tip credit taken for each payment period.

109.    Based on Tipped Pennsylvania Plaintiff's observations and conversations with other tipped employees at Davio's Restaurants in Pennsylvania, Tipped Pennsylvania Plaintiff CHUCK REYNOLDS and the Tipped Pennsylvania Subclass Members were similarly required to spend at least twenty percent (20%) of their work shifts engaging in non-tipped related activities, such as setting tables; moving chairs and bar carts; setting bar; cutting fruits; decorating the restaurant for events; cleaning the restaurant; mopping the floor; cleaning the windows; watering plants; and other non-tip related activities.

110.    Based on Tipped Pennsylvania Plaintiffs' observations and conversations with other tipped employees at Davio's Restaurants in Pennsylvania, Defendants required Tipped

Pennsylvania Plaintiff CHUCK REYNOLDS and other tipped employees to wear a jacket with the restaurant logo while working. Throughout their employment with Defendants, Tipped Pennsylvania Plaintiff and other tipped employees at Davio's Restaurants were required to incur out-of-pocket expenses (i) to purchase several of the same required jacket at $35.00 per unit, and (ii) to have the uniform cleaned and pressed via drycleaning services. However, Defendants never reimbursed the tipped employees for any of the out-of-pocket costs of purchasing and cleaning the uniforms. Because Tipped Pennsylvania Plaintiff and the Tipped Pennsylvania Subclass were at all times paid at reduced hourly rates that were less than the Pennsylvania minimum wage, the out-of-pocket uniform expenses resulted in the reduction of wages below the required minimum wage and overtime compensation.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

111.    Plaintiffs reallege and incorporate Paragraphs 1 through 110 of this Class and Collective Action Complaint as if fully set forth herein.

112.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

113.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

114.    At all relevant times, Defendants had gross annual revenues in excess of $500,000.

115.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiffs and FLSA Collective Plaintiffs the full amount of wages due to an invalid meal time deduction, in violation of the FLSA.

116.    At all relevant times, Defendants had a policy and practice of failing to pay Tipped Plaintiffs and Tipped FLSA Collective Plaintiffs the federal minimum wage due to an invalid tip credit allowance, in violation of the FLSA.

117.    At all relevant times, Defendants had a policy and practice of failing to pay Tipped Plaintiffs and Tipped FLSA Collective Plaintiffs the federal minimum wage and overtime compensation due to unreimbursed costs of purchasing and maintaining the required uniforms, in violation of the FLSA.

118.    Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

119.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

120.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

121.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

122.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wage, unpaid overtime wages, plus an equal amount as liquidated damages.

123.    Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

124.    Plaintiffs reallege and incorporate Paragraphs 1 through 123 of this Class and Collective Action Complaint as if fully set forth herein.

125.    At all relevant times, New York Plaintiffs and New York Subclass Members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

126.    Defendants knowingly and willfully failed to pay New York Plaintiffs and New York Subclass Members the full amount of regular and overtime wages as a result of invalid meal time deductions, in violation of the New York Labor Law.

127.    Defendants knowingly and willfully failed to pay Tipped New York Plaintiffs and Tipped New York Subclass Members the New York minimum wage due to an invalid tip credit allowance, in violation of the New York Labor Law.

128.    Defendants knowingly and willfully failed to reimburse the costs of purchasing and maintaining the required uniforms to Tipped New York Plaintiffs and Tipped New York Subclass Members, in violation of the New York Labor Law.

129.    Defendants knowingly and willfully failed to provide New York Plaintiffs and New York Subclass Members with proper wage statements as required under the New York Labor Law.

130.    Defendants knowingly and willfully failed to provide New York Plaintiffs and New York Subclass Members with proper wage and hour notices as required under the New York Labor Law.

131.    Due to the Defendants' New York Labor Law violations, New York Plaintiffs and New York Subclass Members are entitled to recover from Defendants unpaid wages due to invalid meal time deductions, unpaid minimum wage due to invalid tip credit, unreimbursed uniform expenses, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the New York Labor Law.

COUNT III

VIOLATION OF THE MASSACHUSETTS FAIR WAGE LAW

132.    Plaintiffs reallege and incorporate Paragraphs 1 through 131 of this Class and Collective Action Complaint as if fully set forth herein.

133.    At all relevant times, Massachusetts Plaintiffs and Massachusetts Subclass Members were non-exempt employees of Defendants and Defendants were employers within the meaning of the Massachusetts wage laws.

134.    The foregoing conduct, as alleged herein, violates the Massachusetts Fair Wage Law, M.G.L. c. 151, §§ 1A *et seq.* and related regulations.

135.    Defendants knowingly and willfully violated the rights of Massachusetts Plaintiffs and Massachusetts Subclass Members under the Massachusetts Fair Wage Law by failing to pay them the full amount of regular and overtime wages as a result of invalid meal time deductions.

136.    Defendants knowingly and willfully violated the rights of Tipped Massachusetts Plaintiffs and Tipped Massachusetts Subclass Members under the Massachusetts Fair Wage Law by failing to pay them the Massachusetts minimum wage due to an invalid tip credit allowance.

137.    Defendants knowingly and willfully violated the rights of Tipped Massachusetts Plaintiffs and Tipped Massachusetts Subclass Members under the Massachusetts Fair Wage Law by failing to reimburse the costs of purchasing and maintaining the required uniforms.

138.    Defendants failed to keep, preserve, maintain and furnish accurate records of time worked by Massachusetts Plaintiffs and Massachusetts Subclass Members.

139.    Due to Defendants' violations of the Massachusetts Fair Wage Law, Massachusetts Plaintiffs and Massachusetts Subclass Members are entitled to recover from the Defendants their unpaid wages due to invalid meal time deductions, unpaid minimum wage due to invalid tip credit, unreimbursed uniform expenses, damages for unreasonably delayed payments, reasonable attorneys' fees, treble damages, and costs and disbursements of the action.

## COUNT IV

## VIOLATION OF THE PENNSYLVANIA MINIMUM WAGE ACT

140.    Plaintiffs reallege and incorporate Paragraphs 1 through 139 of this Class and Collective Action Complaint as if fully set forth herein.

141.    At all relevant times, Pennsylvania Plaintiffs and Pennsylvania Subclass Members were non-exempt employees of Defendants and Defendants were employers within the meaning of the Pennsylvania wage laws.

142.    Defendants knowingly and willfully violated the rights of Pennsylvania Plaintiffs and Pennsylvania Subclass Members under the Pennsylvania Minimum Wage Act by failing to pay them the full amount of regular and overtime wages as a result of invalid meal time deductions.

143.    Defendants knowingly and willfully violated the rights of Tipped Pennsylvania Plaintiffs and Tipped Pennsylvania Subclass Members under the Pennsylvania Minimum Wage Act by failing to pay them the Pennsylvania minimum wage due to an invalid tip credit allowance.

144.    Defendants knowingly and willfully violated the rights of Tipped Pennsylvania Plaintiffs and Tipped Pennsylvania Subclass Members under the Pennsylvania Minimum Wage Act by failing to reimburse the costs of purchasing and maintaining the required uniforms.

145.    Defendants failed to keep, preserve, maintain and furnish accurate records of time worked by Pennsylvania Plaintiffs and Pennsylvania Subclass Members.

146.    Due to Defendants' violations of the Pennsylvania Minimum Wage Act, Pennsylvania Plaintiffs and Pennsylvania Subclass Members are entitled to recover from the Defendants their unpaid wages due to invalid meal time deductions, unpaid minimum wage due to invalid tip credit, unreimbursed uniform expenses, damages for unreasonably delayed payments, reasonable attorneys' fees, treble damages, and costs and disbursements of the action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and applicable state wage laws;

b.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid minimum wage due under the FLSA and applicable state wage laws;

d.   An award of unreimbursed uniform expenses due under the FLSA and applicable state wage laws;

e.   An award of unpaid regular and overtime wages due under the FLSA and applicable state wage laws;

f.   An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA;

g.   An award of liquidated damages as a result of Defendants' willful failure to pay wages, pursuant to the applicable state wage laws;

h.   An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.   Designation of Plaintiffs as the Representatives of the FLSA Collective Plaintiffs;

j.   Designation of this action as a class action pursuant to F.R.C.P. 23;

k.   Designation of Plaintiffs as Representatives of the Class; and

l.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: June 3, 2019                    Respectfully submitted,

                                       LEE LITIGATION GROUP, PLLC

                        By:      */s/ C.K. Lee*

                                       C.K. Lee, Esq. (CL 4086)
                                       Anne Seelig, Esq. (AS 1976)
                                       30 East 39th Street, Second Floor
                                       New York, NY 10016
                                       Tel.: (212) 465-1188
                                       Fax: (212) 465-1181

                                       *Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
                                       *and the Class*